SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------X

THE CITY OF NEW YORK,

Plaintiff

-against-

PATIO DELIVERY, INC. d/b/a MOTOCLICK,
and JUAN PABLO SALINAS SALEK,

Defendants.

-------------------------------------------------------------X

Index No. _____

**SUMMONS**

**TO THE ABOVE-NAMED DEFENDANTS:** Patio Delivery, Inc. and Juan Pablo Salinas Salek.

**YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and to serve a copy of your answer on Plaintiffs' attorney within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint. The action will be heard in the Supreme Court of the State of New York in the County of New York. Venue is proper under CPLR § 503(a) because a substantial part of the events or omissions giving rise to these claims occurred in New York County.

1

Dated: January 14, 2026
New York, New York

MURIEL GOODE-TRUFANT
Corporation Counsel of the City of New York
Gail Rubin, Division Chief
Attorneys for Plaintiff City of New York
100 Church Street
New York, New York 10007
(212) 436-0274

_____
By: Gabriel Gutierrez, Special Assistant Corporation Counsel
John De Vito, Special Assistant Corporation Counsel
Emily Hoffman, Special Assistant Corporation Counsel
Elizabeth Wagoner, Special Assistant Corporation Counsel
Michael Tiger, Special Assistant Corporation Counsel

TO:

PATIO DELIVERY, INC.
c/o CT Corporation System
28 Liberty Street
New York, NY 10005

JUAN PABLO SALINAS SALEK
168 Tonnelle Avenue
Jersey City, NJ 07306

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------X

THE CITY OF NEW YORK,

                     Plaintiff

-against-

PATIO DELIVERY, INC. d/b/a MOTOCLICK,
and JUAN PABLO SALINAS SALEK,

                     Defendants.

-------------------------------------------------------------X

Index No. _____

**VERIFIED COMPLAINT**

       Plaintiff the City of New York (the "City"), by its undersigned counsel, as and for their

Verified Complaint, allege as follows:

## INTRODUCTION

1.      The City brings this action against Defendants Patio Delivery, Inc. d/b/a

Motoclick ("Motoclick") and Juan Pablo Salinas Salek, Motoclick's chief executive officer, for

their pattern or practice of violating multiple provisions of the Delivery Worker Laws, defined

*infra*. Juan Pablo Salinas Salek operates Motoclick as a scam that targets and steals from

immigrant workers. The scam is simple: from April 22, 2022 through the present ("Relevant

Time Period"), Defendants have signed workers up to perform deliveries on their app, then

proceeded to steal workers' tips and some or all of their earnings from deliveries. Defendants

also do not pay their workers New York City's minimum pay rate, currently $21.44 per hour.

Defendants block workers from working for the service in retaliation for complaining about

these practices.

2.      New York City passed the Delivery Worker Laws in 2021 to address systemic

issues facing app-based food delivery workers, including dangerous working conditions and low

pay. According to a report published by the Department of Consumer and Worker Protection

1

("DCWP") in 2022, delivery workers experienced the highest rates of occupational injury and death compared to any occupation in New York City and earned on average just over $4 an hour after expenses, excluding tips.

3.     Core to the Delivery Worker Laws are several pay-related requirements for third-party food delivery services and third-party courier services ("Food Delivery Services") that offer same-day pickup or delivery from New York City restaurants. These requirements are codified at New York City Administrative Code Sections 20-1501 *et seq.* ("N.Y.C. Admin. Code") and Title 6 of the Rules of the City of New York ("6 R.C.N.Y.") Sections 7-801 *et seq.* (collectively, "Delivery Worker Laws") and include the following:  A Food Delivery Service must pay its food delivery workers ("workers") for the work they perform each pay period, and do so within seven days of the end of the pay period. N.Y.C. Admin. Code § 20-1523(b); 6 R.C.N.Y. § 7-807(b), (c). A Food Delivery Service must pay workers the Minimum Pay Rate DCWP sets by rule, maintain specific compliance records for three years, and submit regular reports to DCWP to facilitate compliance monitoring. N.Y.C. Admin. Code §§ 20-1506(a); 20-1522; 6 R.C.N.Y. §§ 7-805, 7-810. A Food Delivery Service must pay workers all tip earnings and cannot use workers' tips to offset its minimum payment obligations. N.Y.C. Admin. Code § 20-1522(b); 6 R.C.N.Y. § 7-810(e).

4.     Along with the pay requirements, the Delivery Worker Laws prohibit a Food Delivery Service or any person from taking adverse action against a worker for exercising protected rights. N.Y.C. Admin. Code § 20-1504.

5.     Defendants have flagrantly violated the Delivery Worker Laws – and on information and belief continue to do so to this day, by: (1) failing to pay workers compensation for work performed; (2) paying workers far less than the Minimum Pay Rate required by law; (3)

2

NYSCEF DOC. NO. 1

INDEX NO. 450440/2026

RECEIVED NYSCEF: 01/15/2026

misappropriating, and failing to pay out, gratuities customers paid to workers; and (4) retaliating against workers who exercise their rights under the Delivery Worker Laws.

6. Defendants' pattern or practice of misappropriating workers' earnings has prompted complaints from over 20 workers to DCWP, and these illegal practices continue to harm many more workers to this day.

7. The City brings this civil action against Defendants Motoclick and Juan Pablo Salinas Salek pursuant to N.Y.C. Admin. Code § 20-1512(a) for injunctive relief prohibiting Mr. Salinas Salek, Motoclick, and Motoclick's officers and agents from operating as a third-party food delivery service or third-party courier service in New York City until they come into compliance with the Delivery Worker Laws and pay all amounts the City seeks herein. These amounts include: all illegally retained earnings owed to workers, statutory damages to workers calculated as three times the amount of the unpaid minimum pay and gratuities, statutory damages of $200 to workers per pay period for each late payment, statutory damages of $200 per trip offer to workers for failure to include required disclosures, statutory damages of between $500 and $2,500 and equitable relief for each instance of retaliation each worker experienced, civil penalties to New York City for each violation, interest on all amounts, and such other remedies as may be appropriate under the Delivery Worker Laws. N.Y.C. Admin. Code §§ 20-1508, 20-1509.

## PARTIES

8. Plaintiff the City of New York is a municipal corporation organized under the laws of the State of New York.

3

9. Defendant Patio Delivery, Inc. d/b/a Motoclick is a foreign business corporation organized under the laws of the state of Delaware, with a principal place of business in New York City.

10. At all relevant times, Motoclick was a delivery service and a third-party courier service engaging food delivery workers as independent contractors in New York City, as those terms are defined in the Delivery Worker Laws. N.Y.C. Admin. Code § 20-1501.

11. Defendant Juan Pablo Salinas Salek is the founder, Director, and Chief Executive Officer of Motoclick. On information and belief Juan Pablo Salinas Salek resides in Jersey City, New Jersey and maintains a residence in Bolivia. At all relevant times, Juan Pablo Salinas Salek owned and operated Motoclick and personally directed all aspects of its operations, as detailed herein.

<strong><u>JURISDICTION & VENUE</u></strong>

12. The Court has jurisdiction over Motoclick and Juan Pablo Salinas Salek pursuant to CPLR § 301 *et seq.*

13. Venue is proper in this jurisdiction pursuant to CPLR § 503(a).

14. Under Section 20-1512 of the New York City Administrative Code, the City is empowered to bring a civil action where reasonable cause exists to believe a third-party courier service is engaged in a pattern or practice of violating the Delivery Worker Laws.

<strong><u>THE DELIVERY WORKER LAWS</u></strong>

15. The Delivery Worker Laws at Title 20, Chapter 15 of the New York City Administrative Code, and its implementing Rules, Title 6, Chapter 7 of the Rules of the City of New York, went into effect on April 22, 2022. The Delivery Worker Laws' "Minimum Pay

4

Rate," codified at N.Y.C. Admin. Code § 20-1522 and 6 R.C.N.Y. § 7-810 ("Minimum Pay Rule"), went into effect July 12, 2023.

16. The Delivery Worker Laws cover third-party food delivery services and third-party courier services that that engage food delivery workers as independent contractors in New York City. N.Y.C. Admin. Code § 20-1501.

17. The Delivery Worker Laws contain several mechanisms to improve conditions for workers. Each of the mechanisms relevant to this matter is discussed below.

18. Complete and Timely Pay: A Food Delivery Service must establish a single pay period for all workers it engages and must pay workers for work performed at least once a week, within seven days of the close of the pay period in which the work was performed. N.Y.C. Admin. Code § 20-1523(b); 6 R.C.N.Y. § 7-807(b), (c). A Food Delivery Service's pay period may begin on any day and at any hour of the day, but must remain fixed once established, unless the Food Delivery Service makes a change it intends to be permanent. *Id*.

19. Pay Disclosure: When making a trip offer to a worker, a Food Delivery Service must disclose to a worker the amount of compensation and gratuity the worker will earn before the worker accepts the trip offer, and pay the worker no less than the amount that the Food Delivery Service disclosed. N.Y.C. Admin. Code §§ 20-1521(d), 1523(b); 6 R.C.N.Y. § 7-806(j).

20. Minimum Payment: A Food Delivery Service must pay workers at least the Minimum Pay Rate. N.Y.C. Admin. Code § 20-1522; 6 R.C.N.Y. § 7-810. The Minimum Pay Rate was $17.96 per hour for pay periods that began on or after July 12, 2023 through March 30, 2024, $19.56 per hour for pay periods that began on or after April 1, 2024 through March 30, 2025, and $21.44 per hour for pay periods that began on or after April 1, 2025 through March 30,

5

2026. DCWP adjusts the Minimum Pay Rate for inflation annually; the next adjustments will apply to pay periods that begin on or after April 1, 2026 through March 30, 2027.

21. <u>Gratuity Protections</u>: A Food Delivery Service must not retain any portion of any gratuity or use gratuities to offset or cover any portion of minimum payment. N.Y.C. Admin. Code § 20-1522(b); 6 R.C.N.Y. §§ 7-806(j), 7-810(e).

22. <u>Retaliation</u>: No person shall take any adverse action against a worker for exercising or attempting to exercise any right under the Delivery Worker Laws. N.Y.C. Admin. Code § 20-1504; 6 R.C.N.Y. § 7-803. Adverse actions include denials of work opportunities and reductions in hours or pay, amongst other negative consequences. N.Y.C. Admin. Code § 20-1504.

23. <u>Recordkeeping</u>: A Food Delivery Service must maintain records documenting its compliance with the requirements of the Delivery Worker Laws for three years and allow DCWP access to such records in furtherance of an investigation. N.Y.C. Admin. Code § 20-1506; 6 R.C.N.Y. § 7-805. A Food Delivery Service must also submit reports to DCWP concerning its operations in New York City including details about payments made to workers. 6 R.C.N.Y. § 7-805(d).

24. <u>Individual Liability</u>: A corporate entity and a natural person may be a third-party courier service jointly and severally liable for violations. N.Y.C. Admin. Code § 20-1501 (The term "delivery service" means a ***person*** that facilitates, offers, or arranges for the delivery of goods to or from a location in the city, including, but not limited to…a third-party courier service…); *id*. (The term "third-party courier service" means a service that (i) facilitates the same-day delivery or same-day pickup of food, beverages, or other goods … and (ii) that is

6

owned and operated by *a person* other than the person who owns such food service establishment.)

25. Rebuttable Presumption: A Food Delivery Service's failure to maintain, retain, or produce required records relevant to a material fact alleged by DCWP in a notice of violation issued creates a rebuttable presumption that such fact is true. N.Y.C. Admin. Code § 20-1506(b).

## FACTS

### Defendants' Operations

26. On February 5, 2024, DCWP opened an investigation into Motoclick's compliance with the Delivery Worker Laws, after receiving complaints from more than 20 workers about Motoclick's violations of the Food Delivery Worker Laws, which are described herein.

27. Motoclick and Juan Pablo Salinas Salek are each a "third-party courier service" as that term is defined by Section 20-1501 of the Delivery Worker Laws because they (i) facilitate the same-day pickup and delivery of food, beverages, and other goods from food service establishments in New York City and (ii) do not own any of the food service establishments to which they provide delivery services.

28. Juan Pablo Salinas Salek founded Patio Delivery, Inc. in Bolivia in 2015 and, in or around 2021, expanded operations to New York City under the trade name "Motoclick."

29. Mr. Salinas Salek exercises direct operational control over Motoclick's New York operations. Upon information and belief, he registered the motoclickapp.com domain on September 20, 2021, opened Motoclick's New York City office in June 2022, and controls the company's social media accounts, using them to post job listings and other information about his businesses.

7

30. Mr. Salinas Salek personally leads Motoclick's worker recruitment efforts, targeting primarily Spanish-speaking immigrants through social media and WhatsApp. Mr. Salinas Salek communicates directly with workers using these platforms.

31. Through these recruitment channels, Mr. Salinas Salek has offered workers an hourly wage, peak-hour bonuses, increased payouts for large catering orders, and the ability to begin working immediately upon sign-up.

32. Through these recruitment channels, Mr. Salinas Salek instructs workers to download the "Moto Driver" app. After the worker signs up, Mr. Salinas Salek and his associates use the Moto Driver app and WhatsApp to schedule workers for shifts and assign them orders in New York City.

33. In violation of Section 20-1521(d) of the Delivery Worker Laws, when making trip offers to workers, Defendants do not disclose the pickup address, estimated time and distance, tip, and pay the worker will receive. This lack of transparency forces workers to accept orders blindly, without knowing whether their compensation will justify the time and expense involved.

34. A worker only finds out how much Defendants claim to owe the worker for a delivery after the worker confirms with Defendants that he completed the delivery. Defendants provide earnings information on Moto Driver's summary screens, which display line items showing the gratuities, pay, fees deducted from each order, and the date the worker can expect to be paid.

35. Defendants' practice of providing these disclosures *after* a worker completes the delivery is unlawful under the Delivery Worker Laws, which require disclosures in the app interface *before* a worker accepts a trip offer. N.Y.C. Admin. Code § 20-1521(d).

8

36. Further, as discussed below, these after-the-fact payment summaries in the Moto Driver interface do not accurately represent what Defendants actually pay workers. Defendants' pattern or practice is to pay workers only a portion of the earnings amount they display to the worker in Moto Driver. Sometimes, Defendants refuse to pay entirely.

**Defendants Steal Workers' Earnings**

37. Defendants' pattern or practice during the Relevant Time Period is to deduct illegal fees from a worker's pay, in violation of the Delivery Worker Laws' complete and timely pay requirement.

38. Illegal fees Defendants have deducted from worker pay include:

a) $0.25 per order, for each order a worker delivers,

b) $10.00 for each cancelled order,

c) $10.00 each time a worker does not log on for a scheduled shift, and

d) a penalty in the amount of the entire cost of an order if the consumer reports that the order arrived damaged.

39. Defendants' pattern or practice was, and remains, to misappropriate all, or substantially all, of the tips customers leave for workers when placing their orders, in violation of the law. N.Y.C. Admin. Code § 20-1523(b)(2).

40. The Delivery Worker Laws do not permit Food Delivery Services to take fees out of a worker's earnings or misappropriate tips. N.Y.C. Admin. Code § 20-1523. The Delivery Worker Laws guarantee that workers receive complete and timely payment of the compensation the Food Delivery Service disclosed to the worker for work performed, as well as all tip earnings. N.Y.C. Admin. Code §§ 20-1521; 20-1523.

9

41. On some occasions, the illegal fees Defendants deducted from workers' pay resulted in negative balances on workers' accounts, meaning a worker ostensibly owed money to Defendants despite having completed deliveries.

42. In DCWP's investigation, DCWP reviewed dozens of pay statements from Motoclick workers. All pay statements showed one or more illegal fees. Many showed $10 deductions for cancelled orders. Several showed the deductions of the entire cost of an order from a worker's earnings. Some even reflected negative balances; these workers shared their accompanying WhatsApp communications to Motoclick asking why *they* owed Motoclick money after a day of work.

43. Defendants' practices as set forth above constitute a pattern or practice of violating Sections 20-1522 and 20-1523 of the New York City Administrative Code.

**Defendants Ignore Minimum Pay Requirements**

44. Defendants made no changes to their exploitative practices when the Minimum Pay Rate went into effect on July 12, 2023, and Defendants' pattern or practice has been to pay far less than the Minimum Pay Rate. N.Y.C. Admin. Code § 20-1522; 6 R.C.N.Y. § 7-810.

45. Pay statements workers provided to DCWP show lists of orders with the associated times the worker spent on them and corresponding payments that are far less than what workers were entitled to under the Minimum Pay Rule.

46. Defendants' Independent Contractor Agreement states that workers are paid according to one of four schemes: a per-mile rate of $1.05 + $0.70 per pick-up; an hourly rate of $10.00 plus tips; a fixed hourly rate of $15.00; or a fixed, per-order rate.

10

47. Each of the four pay schemes resulted in Defendants compensating workers at far lower rates than the Minimum Pay Rule requires. N.Y.C. Admin. Code § 20-1522; 6 R.C.N.Y. § 7-810.

48. Defendants' practices as set forth above constitute a pattern or practice of violating Section 20-1522 of the New York City Administrative Code.

**Defendants Retaliate Against Workers for Exercising Their Rights**

49. Defendants' pattern or practice during the Relevant Time Period has been to retaliate against the workers who repeatedly contacted Defendants asking to get paid. Defendants do this by blocking these workers from logging into their Motoclick accounts, thereby denying them the ability to work, in violation of the Delivery Worker Laws' anti-retaliation protections. N.Y.C. Admin. Code § 20-1504; 6 R.C.N.Y. § 7-803. For example, Defendants told one worker who asked various customer support agents to be paid to register for a Zelle account. After the worker registered a Zelle account and shared his information, Defendants still refused to pay the worker. Defendants then deactivated the worker's account and did not pay him.

50. Defendants' practices as set forth above constitute a pattern or practice of violating Section 20-1504 of the New York City Administrative Code.

**Defendants Refuse to Cooperate with DCWP's Investigation**

51. After receiving complaints from workers, DCWP sent Defendants a letter in early 2024 outlining their legal compliance obligations, including the obligation to pay the Minimum Pay Rate, to pay all compensation owed on time, to disclose specific details about trips in trip offers, and to submit compliance reports to DCWP.

52. Defendants did not acknowledge or respond to the February 5, 2024 letter.

11

53.     By email dated September 10, 2024, in response to further outreach from DCWP, Assistant Manager Paula Salek told DCWP that Defendants had just become aware of the Delivery Worker Laws and requested an extension of time to comply or an exemption. DCWP declined to excuse Defendants' noncompliance, as doing so would be inconsistent with DCWP's legal obligation to enforce the Delivery Worker Laws. N.Y.C. Admin. Code § 20-1507.

54.     On January 17, 2025, DCWP sent Defendants a Document and Information Request to investigate Motoclick's non-compliance with the Delivery Worker Laws.

55.     Defendants did not produce any documents or information in response to the Document and Information Request or respond to DCWP's subsequent letters and emails.

56.     Defendants have never submitted a compliance report to DCWP as required by N.Y.C. Admin. Code § 20-1506 and 6 R.C.N.Y. § 7-805.

**FIRST CAUSE OF ACTION**
*Pattern or Practice of Violating Section 20-1523 of the Delivery Worker Laws by Failing to Pay Workers for Work Performed*

57.     The City realleges all paragraphs above as if fully set forth herein.

58.     Defendants are required to pay workers for work performed no less frequently than once a per pay period. N.Y.C. Admin. Code § 20-1523(b).

59.     Defendants must pay all compensation owed to each worker for a pay period no later than seven calendar days after the end of such pay period. N.Y.C. Admin Code § 20-1523(b)(1).

60.     DCWP's investigation revealed evidence that Defendants failed to pay workers completely and on time for work performed, including pay statements from dozens of workers showing illegal fee deductions, screenshots of workers requesting pay months after performing

12

work, pay statements reflecting negative account balances after workers completed deliveries, and WhatsApp communications in which workers asked Defendants why they owed money after a day of work.

61. Defendants are required to maintain records of the date, time, and amount of any payment made to each worker for each pay period. N.Y.C. Admin. Code § 20-1506(a); 6 R.C.N.Y. § 7-805(c)(5)(ii).

62. Defendants committed a unique violation of Section 20-1523(b) of the Delivery Worker Laws each time they failed to pay a worker for work performed within seven days of the close of a pay period, for each such worker. N.Y.C. Admin. Code § 20-1508.

63. Defendants engaged, and continue to engage, in a pattern or practice of violating Section 20-1523(b) of the Delivery Worker Laws as set forth above. N.Y.C. Admin. Code § 20-1512.

64. By reason of the foregoing, the City is entitled to (1) declaratory and injunctive relief and an order directing compliance with Section 20-1523(b) of the Delivery Worker Laws; (2) $500 in civil penalties for each violation pursuant to Section 20-1509 of the Delivery Worker Laws; (3) three times the amount of any payment that should have been made and was not timely made pursuant to Section 20-1508(a)(3)(c) of the Delivery Worker Laws; (4) $200 in relief for each violation pursuant to Section 20-1508(a)(3)(d) of the Delivery Worker Laws; (5) compensatory damages and other relief required to make each worker whole pursuant to Section 20-1508(a) of the Delivery Worker Laws; and (6) any other appropriate relief.

## SECOND CAUSE OF ACTION
*Pattern or Practice of Violating Section 20-1522(a)(3) of the Delivery Worker Laws by Failing to Pay the Minimum Pay Rate*

65. The City realleges all paragraphs above as if fully set forth herein.

13

66. Defendants are required to pay workers at least the Minimum Pay Rate established by DCWP. N.Y.C. Admin. Code § 20-1522(a)(3); 6 R.C.N.Y. § 7-810.

67. The Minimum Pay Rate was $17.96 per hour for pay periods from July 12, 2023 to April 1, 2024, $19.56 per hour for pay periods that began on or after April 1, 2024 to March 30, 2025, and is $21.44 per hour for pay periods that began on or after April 1, 2025 through March 30, 2026. 6 R.C.N.Y. § 7-810(g)-(i).

68. DCWP's investigation revealed evidence that Defendants failed to pay the Minimum Pay Rate, including pay statements showing payments far below the required rate and illegal fees, as well as Motoclick's Independent Contractor Agreement, which sets forth compensation schemes that result in compensation below the Minimum Pay Rate.

69. Defendants are required to maintain records documenting their compliance with the minimum pay requirements, including compensation paid to each worker and the basis for such compensation, and submit reports to DCWP demonstrating their compliance with the Minimum Pay Rate. N.Y.C. Admin. Code § 20-1506(a); 6 R.C.N.Y. § 7-805.

70. Defendants committed a unique violation of Section 20-1522(e) of the Delivery Worker Laws each pay period that they failed to pay a worker at least the Minimum Pay Rate, for each such worker. N.Y.C. Admin. Code § 20-1508(3)(c), (b).

71. Defendants engaged, and continue to engage, in a pattern or practice of violating Section 20-1522(e) of the Delivery Worker Laws as set forth above. N.Y.C. Admin. Code § 20-1512(e).

72. By reason of the foregoing, the City is entitled to (1) declaratory and injunctive relief and an order directing compliance with Section 20-1522(e) of the Delivery Worker Laws; (2) $500 in civil penalties for each violation pursuant to Section 20-1509 of the Delivery Worker

14

Laws; (3) three times the amount of any payment that should have been made and was not timely made pursuant to Section 20-1508(a)(3)(c) of the Delivery Worker Laws; (4) compensatory damages and other relief required to make each worker whole pursuant to Section 20-1508(a)(1) of the Delivery Worker Laws; and (5) any other appropriate relief.

**THIRD CAUSE OF ACTION**

*Pattern or Practice of Violating Section 20-1522(b) of the Delivery Worker Laws by Failing to Pay Workers Gratuities*

73. The City realleges all paragraphs above as if fully set forth herein.

74. Defendants' pattern or practice was to unlawfully keep gratuities customers paid rather than remitting them to workers, as the law requires.

75. A third-party food delivery service or third-party courier service shall not retain any portion of any gratuity or use gratuities to offset or cover any portion of minimum payments. N.Y.C. Admin. Code § 20-1522(b); 6 R.C.N.Y. §§ 7-806(j), 7-810(e).

76. Defendants must pay workers all gratuities earned in a pay period within seven days of the close of such pay period. N.Y.C. Admin. Code § 20-1523(b); 6 R.C.N.Y. § 7-807(c).

77. Defendants committed a unique violation of Section 20-1522(b) of the Delivery Worker Laws each time they retained any portion of a gratuity owed to a worker. N.Y.C. Admin. Code § 20-1508(a)(3)(c), (b).

78. Defendants engaged, and continue to engage, in a pattern or practice of violating Section 20-1522(b) of the Delivery Worker Laws as set forth above. N.Y.C. Admin. Code § 20-1512.

79. By reason of the foregoing, the City is entitled to (1) declaratory and injunctive relief and an order directing compliance with Section 20-1522(b) of the Delivery Worker Laws; (2) $500 in civil penalties for each violation pursuant to Section 20-1509 of the Delivery Worker

15

Laws; (3) three times the amount of illegally retained gratuities pursuant to Section 20-1508(a)(3)(c) of the Delivery Worker Laws; (4) compensatory damages and other relief required to make each worker whole pursuant to Section 20-1508(a)(1) of the Delivery Worker Laws; and (5) any other appropriate relief.

**FOURTH CAUSE OF ACTION**
*Pattern or Practice of Violating Section 20-1504 of the Delivery Worker Laws by Retaliating Against Workers for Exercising Their Rights*

80. The City realleges all paragraphs above as if fully set forth herein.

81. No person shall take any adverse action against a worker that penalizes such worker for, or is reasonably likely to deter such worker from, exercising or attempting to exercise any right protected under the Delivery Worker Laws. N.Y.C. Admin. Code § 20-1504.

82. Adverse actions include denial of work opportunities, deactivations, or any other act that results in a worker not being offered a trip. N.Y.C. Admin. Code § 20-1504; 6 R.C.N.Y. § 7-803(a).

83. DCWP's investigation revealed evidence that Defendants retaliated against workers who exercised their rights under the Delivery Worker Laws, including worker accounts and WhatsApp communications showing that Defendants blocked workers from accessing the Moto Driver app after those workers repeatedly asked to be paid.

84. Defendants are required to maintain records of each deactivation of a worker, including the date and time of deactivation, the reason for deactivation, and whether the deactivation was effected through an automatic or manual process. N.Y.C. Admin. Code § 20-1506(a); 6 R.C.N.Y. § 7-805(c)(8).

85. Defendants committed a unique violation of Section 20-1504 of the Delivery Worker Laws each time they deactivated or blocked a worker who complained about withheld

pay, deductions, or other violations of their rights under the Delivery Worker Laws. N.Y.C. Admin. Code § 20-1508(a)(3)(a), § 20-1508(b).

86. Defendants engaged, and continue to engage, in a pattern or practice of violating Section 20-1504 of the Delivery Worker Laws as set forth above. N.Y.C. Admin. Code § 20-1512.

87. By reason of the foregoing, the City is entitled to (1) declaratory and injunctive relief and an order directing compliance with Section 20-1504 of the Delivery Worker Laws; (2) $500 in civil penalties for each violation pursuant to Section 20-1509 of the Delivery Worker Laws; (3) $500 in relief for each violation not involving the denial of future work opportunities pursuant to Section 20-1508(a)(3)(a)(1) of the Delivery Worker Laws; (4) $2,500 in relief for each violation involving denial of future work opportunities pursuant to Section 20-1508(a)(3)(a)(2) of the Delivery Worker Laws; (5) any equitable relief appropriate under the circumstances, including but not limited to payment of any lost earnings resulting from such retaliation; (6) compensatory damages and other relief required to make each worker whole pursuant to Section 20-1508(a)(1); and (7) any other appropriate relief.

### FIFTH CAUSE OF ACTION
*Pattern or Practice of Violating Section 20-1521 of the Delivery Worker Laws by Failing to Make Required Disclosures with Each Trip Offer*

88. The City realleges all paragraphs above as if fully set forth herein.

89. Defendants failed to disclose the pick-up address, estimated time and distance, amount of gratuity, and amount of compensation to a worker each time they offered a worker a trip, in violation of N.Y.C. Admin. Code § 20-1521(d).

17

90. Defendants are required to maintain records of all information disclosed to a delivery worker before such worker accepted a trip. N.Y.C. Admin. Code § 20-1506(a); 6 R.C.N.Y. § 7-805(c)(4).

91. Defendants violated Section 20-1521(d) of the Delivery Worker Laws each time they failed to make required trip disclosures.

92. Defendants engaged, and continue to engage, in a pattern or practice of violating Section 20-1521(d) of the Delivery Worker Laws as set forth above.

93. By reason of the foregoing, the City is entitled to (1) declaratory and injunctive relief and an order directing compliance with Section 20-1521(d) of the Delivery Worker Laws; (2) $500 in civil penalties for each violation pursuant to Section 20-1509 of the Delivery Worker Laws; (3) $200 in relief for each violation pursuant to Section 20-1508(a)(3)(b) of the Delivery Worker Laws; and (4) any other appropriate relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Motoclick and Juan Pablo Salinas Salek as follows:

a) Declaring that Defendants have engaged in a pattern or practice of violating Sections 20-1522(a)(3), 20-1523(b), 20-1522(b), and 20-1504 of the Delivery Worker Laws;

b) Declaring that Defendants continue to engage in a pattern or practice of violating Sections 20-1522(a)(3), 20-1523(b), 20-1522(b), and 20-1504 of the Delivery Worker Laws;

c) Enjoining Defendants from operating, or operating as, a third-party food delivery service or third-party courier service in New York City; or, in the alternative,

18

ordering Defendants to comply with the Delivery Worker Laws pursuant to Section 20-1512(a)(2) of the Delivery Worker Laws;

d) Requiring Defendants to maintain all records required by the Delivery Worker Laws;

e) Requiring Defendants to submit to DCWP reports required by the Delivery Worker Laws;

f) Declaring and entering judgment that that Defendants are jointly and severally liable for monetary relief owed to each worker on a per instance basis for each violation such worker experienced;

g) Ordering and entering judgment that Defendants pay the per-violation amounts set forth in Section 20-1508(a) of the Delivery Worker Laws, in a total amount to be determined at trial including but not limited to:

    i. All compensatory damages and other relief required to make the worker or former worker whole;

    ii. $500 for each violation of Section 1504 of the Delivery Worker Laws not involving the denial of future work opportunities;

    iii. $2,500 for each violation of Section 1504 of the Delivery Worker Laws involving the denial of future work opportunities;

    iv. Equitable relief for each violation of Section 1504 of the Delivery Worker Laws, including but not limited to payment of any lost earnings resulting from such retaliation;

    v. Three times the amount of any payment that should have been made but was not timely made for each violation of Section 20-1522 of the Delivery Worker Laws;

    vi. $200 for each violation of Section 20-1523 of the Delivery Worker Laws;

19

vii.     $200 for each violation of Section 20-152 of the Delivery Worker Laws;

h)  Declaring and entering judgment that Defendants are jointly and severally liable for civil penalties owed to the City;

i)  Ordering and entering judgment that Defendants pay $500 in civil penalties for each violation each worker experienced pursuant to Section 20-1509 of the Delivery Worker Laws, in a total amount to be determined at trial;

j)  Awarding pre-judgment and post-judgment interest on all amounts;

k)  Granting such other relief as this Court may deem just and proper.

Dated:     New York, New York
          January 14, 2026

                         MURIEL GOODE-TRUFANT
                         Corporation Counsel of the City of New York
                         Attorneys for *Plaintiff The City of New York*
                         100 Church Street
                         New York, New York 10007
                         (212) 436-0274


                         _____
                         By: Gabriel Gutierrez, Special Assistant Corporation Counsel
                         John De Vito, Special Assistant Corporation Counsel
                         Emily Hoffman, Special Assistant Corporation Counsel
                         Elizabeth Wagoner, Special Assistant Corporation Counsel
                         Michael Tiger, Special Assistant Corporation Counsel

20

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

-----------------------------------------------------------------X

THE CITY OF NEW YORK

|  |  |
|---|---|
| Plaintiff | **VERIFICATION OF COMPLAINT** |

-against-

PATIO DELIVERY, INC. d/b/a MOTOCLICK,
and JUAN PABLO SALINAS SALEK,

Defendants.

-----------------------------------------------------------------X

MICHAEL TIGER, an attorney duly admitted to practice in the courts of the State of New York, affirms, pursuant to CPLR 2106 and subject to the penalties of perjury, the following to be true:

I am the General Counsel of the New York City Department of Consumer and Worker Protection, an agency of the City of New York and as such, I am familiar with the file in this matter. I have read the foregoing complaint and the facts within, and I believe them to be true. My belief as to all matters is based upon documentation from the New York City Department of Consumer and Worker Protection, statements made to me by certain officers or agents of the City of New York, and from statements, affidavits or affirmations of other persons.

This verification is not made by the City of New York because the City is a municipal corporation.

Dated: New York, New York
January 14, 2026

MICHAEL TIGER

21