UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

THE CITY OF NEW YORK,                                   26 Civ. 1287-VSB-SDA

                                          Plaintiff,

        -against-


PATIO DELIVERY, INC. d/b/a MOTOCLICK and JUAN
PABLO SALINAS SALEK,

                                          Defendants.

------------------------------------------------------------------------ x


**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
DEFENDANT PATIO DELIVERY, INC.'S COUNTERCLAIMS**


                                          **STEVEN BANKS**
                                          *Corporation Counsel of the*
                                          *City of New York*
                                          100 Church Street
                                          New York, NY 10007
                                          Tel: 212-436-0274


Gerald E. Singleton
Emily Hoffman
John De Vito
Gabriel Gutierrez
Christopher Taylor
        *of Counsel*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 5

STATEMENT OF FACTS ....................................................................................................... 6

ARGUMENT ........................................................................................................................... 10

     **I: THE COURT MUST DISMISS THE FIRST COUNTERCLAIM BECAUSE MOTOCLICK DOES NOT ALLEGE A STATE-IMPOSED DEPRIVATION OF A PROTECTED RIGHT — ONLY THE REPUTATIONAL "DELETERIOUS EFFECTS" OF THE CITY'S STATEMENTS, WHICH IS INSUFFICIENT TO STATE A STIGMA PLUS CLAIM** ................................................................................................................ 10

     **II: THE COURT MUST DISMISS THE SECOND COUNTERCLAIM BECAUSE MOTOCLICK NEITHER IDENTIFIES A PROTECTED RIGHT NOR ALLEGES CONDUCT THAT SHOCKS THE CONSCIENCE TO STATE A SUBSTANTIVE DUE PROCESS CLAIM** .............................. 13

          A.    Motoclick has no protected right to operate its business free from reputational harm caused by government speech ................................................................ 14

          B.    Announcing a lawsuit in press communications does not shock the conscience ......................................................... 15

     **III: THE COURT MUST DISMISS THE THIRD COUNTERCLAIM BECAUSE THE CITY'S STATEMENTS ARE PROTECTED BY THE FAIR AND TRUE REPORTING PRIVILEGE UNDER NEW YORK CIVIL RIGHTS LAW § 74** .............................................................................................. 17

     **IV: THE COURT MUST DISMISS THE THIRD COUNTERCLAIM BECAUSE MOTOCLICK FAILS TO PLEAD SPECIAL DAMAGES WHICH IS REQUIRED TO MAINTAIN A TRADE LIBEL CLAIM** ........ 22

CONCLUSION ......................................................................................................................... 24

WORD COUNT CERTIFICATION ........................................................................................ 25

CERTIFICATE OF SERVICE ................................................................................................ 26

## TABLE OF AUTHORITIES

*Cases*

*1st Amendment Praetorian v. New York Times Company*, No. 1:23-CV-00012 (MKV),
    2025 WL 949575 (S.D.N.Y. Mar. 28, 2025) ............................................................... 18

*689 Eatery Corp. v. City of New York*, 716 F.Supp.3d 88 (S.D.N.Y. 2024) .......................... 13, 15

*Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease and Related Disorders Ass'n,*
    *Inc.*, 796 F.Supp.2d 458 (S.D.N.Y. 2011) ..................................................................... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................... 10

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ............................................................... 10

*Bilinski v. Keith Haring Found., Inc.*, 96 F.Supp.3d 35 (S.D.N.Y. 2015) .......................... 6, 22, 23

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ......................................................... 14

*Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F.Supp.3d 263 (S.D.N.Y.
    2016) ........................................................................................................................ 22

*Freeze Right Refrigeration and Air Conditioning Services v City of New York*,
    101 A.D.2d 175 (1st Dep't 1984) ................................................................... 6, 19, 21

*Giammatteo v. Newton*, 452 F.App'x 24 (2d Cir. 2011) ..................................................... 13, 14, 15

*Golden v. City of New York*, 24 CIV. 5759 (LAK) (GS), 2025 WL 2055697
    (S.D.N.Y. July 7, 2025) ................................................................................... 19, 20

*Greenwood v. New York, Off. of Mental Health*, 163 F.3d 119 (2d Cir. 1998) .......................... 12

*Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63
    (1979) ........................................................................................................................ 18

*Kasada, Inc. v. Access Cap., Inc.*, No. 01 CIV. 8893 (GBD), 2004 WL 2903776 (S.D.N.Y. Dec. 14, 2004).................................................................................................... 22

*Kinsey v. N.Y. Times Co.*, 991 F.3d 171 (2d Cir. 2021).................................................................. 18

*Lively v. Wayfarer Studios LLC*, No. 24-CV-10049 (LJL), 2026 WL 905447 (S.D.N.Y. Apr. 2, 2026).................................................................................................. 18, 19

*Malapanis v. Regan*, 340 F.Supp.2d 184 (D. Conn. 2004)........................................................ 6, 17

*Montalbano v. Port Auth. of New York & New Jersey*, 843 F.Supp.2d 473 (S.D.N.Y. 2012) ..... 13

*N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F.Supp.3d 207 (E.D.N.Y. 2020) ............................ 23

*Natale v. Town of Ridgefield*, 170 F.3d 258 (2d Cir. 1999).......................................................... 14

*O'Connor v. Pierson*, 426 F.3d 187 (2d Cir. 2005) ...................................................................... 13

*Rall v. Hellman*, 284 A.D.2d 113 (1st Dep't 2001).................................................................. 22, 23

*Sadallah v. City of Utica*, 383 F.3d 34 (2d Cir. 2004)...................................................... 6, 11, 12, 13

*Salis v. City of New York*, 81 Misc. 3d 1209(A) (Sup. Ct. Kings Cnty. 2023) ............................. 18

*Sandler v. Simoes*, 609 F.Supp.2d 293 (E.D.N.Y. 2009).............................................................. 22

*Sibiski v. Cuomo*, 08 CV 3376 SJF ARL, 2010 WL 3984706 (E.D.N.Y. Sept. 15, 2010)........... 12

*Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168 (2d Cir. 2002).............................. 16

*United States v. Walters*, 910 F.3d 11 (2d Cir. 2018).................................................................... 17

*Valmonte v. Bane*, 18 F.3d 992 (2d Cir. 1994) ............................................................................. 11

*Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005)................................................................................ 11, 16

**Statutes**

6 R.C.N.Y. § 7-810 ......................................................................................................................... 6

N.Y. Civ. Rights Law § 74 ........................................................................................................... 18

N.Y.C. Admin. Code § 20-1510 ................................................................................................... 16

N.Y.C. Admin. Code § 20-1522 .................................................................................................. 6, 7

N.Y.C. Admin. Code § 20-1523 ..................................................................................................... 7

N.Y.C. Admin. Code §§ 20-1508, 20-1509 ................................................................................. 16

**PRELIMINARY STATEMENT**

Plaintiff / Counterclaim Defendant the City of New York ("Plaintiff" or the "City"), respectfully submits this memorandum of law in support of its motion for an order dismissing counterclaims made by Defendant Patio Delivery, Inc. d/b/a Motoclick ("Motoclick" or "Defendant") pursuant to Federal Rules of Civil Procedure 12(b)(6).

On January 15, 2026, the City filed a complaint against Motoclick and its Chief Executive Officer, Juan Pablo Salinas Salek, alleging violations of New York City's Delivery Worker Laws. The Delivery Worker Laws provide, among other things, a minimum pay rate for delivery workers that delivery services classify as independent contractors. That same day, New York City Mayor Zohran Mamdani and Department of Consumer and Worker Protection ("DCWP") Commissioner Samuel A.A. Levine announced the lawsuit at a press conference. The City also announced the lawsuit in a press release and on social media.

Motoclick alleges three counterclaims arising from the press conference, press release, and social media post. Motoclick contends that statements made in these communications – describing Defendants' practice of paying workers far less than the minimum pay rate, charging them illegal fees, and illegally keeping their tips – violated its procedural due process rights ("First Counterclaim"), substantive due process rights ("Second Counterclaim"), and constituted trade libel ("Third Counterclaim"). As fully detailed below, none of Motoclick's counterclaims are viable. As such, the counterclaims must be dismissed in their entirety pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Motoclick's First Counterclaim fails to state a procedural due process "stigma plus" claim because Defendant has not and cannot allege it suffered any state-imposed burden *in addition to* the alleged stigmatizing statements, as it must do to survive a motion to dismiss.

*Sadallah v. City of Utica*, 383 F.3d 34, 38-39 (2d Cir. 2004). Motoclick only alleges non-actionable "deleterious effects" of reputational harm, which is insufficient. *Id*. Motoclick's Second Counterclaim, alleging a substantive due process violation, also fails, as Motoclick does not and cannot identify any protected right that the City infringed and, regardless, the City's communications about this lawsuit do not shock the conscience. *Malapanis v. Regan*, 340 F.Supp.2d 184, 196 (D. Conn. 2004), *aff'd*, 147 F.App'x 219 (2d Cir. 2005). Finally, Defendant's Third Counterclaim is barred by the privilege extended to fair and true reports of both judicial and investigative proceedings under Section 74 of the New York Civil Rights Law. *Freeze Right Refrigeration and Air Conditioning Services v City of New York*, 101 A.D.2d 175, 181 (1st Dep't 1984). It also fails as Motoclick did not plead special damages, which is required to support a trade libel claim under New York State law. *Bilinski v. Keith Haring Found., Inc.*, 96 F.Supp.3d 35, 51 (S.D.N.Y. 2015) *aff'd in part*, 632 F.App'x 637 (2d Cir. 2015).

Because all three of Motoclick's counterclaims fail as a matter of law, the Court should dismiss them.

## STATEMENT OF FACTS

This case stems from Motoclick's failure to comply with New York City's Delivery Worker Laws, codified at Sections 20-1501 through 20-1527 of the New York City Administrative Code ("N.Y.C. Admin. Code"), and Delivery Worker Rules, codified at Sections 7-801 through 7-810 of Title 6 of the Rules of the City of New York ("6 R.C.N.Y."). The Delivery Worker Laws require, among other things, that delivery services pay delivery workers a minimum pay rate, currently $22.13 per hour. N.Y.C. Admin. Code § 20-1522(a)(3); 6 R.C.N.Y. § 7-810(b). The Delivery Worker Laws also prohibit wage theft by requiring delivery services to pay workers all

compensation for work performed within 7 days and to remit all tips paid by customers. N.Y.C. Admin. Code §§ 20-1522(b), 20-1523(b).

The Delivery Worker Laws are meant to protect delivery workers that delivery services classify as independent contractors from exploitation. Such workers had no job protections at all until the New York City Council adopted the Delivery Worker Laws in 2021. Compl. ¶ 2. The Delivery Worker Laws directed DCWP to study delivery workers' pay and working conditions and to set a minimum pay rate based on the results of the study. *Id.* ¶ 2; N.Y.C. Admin. Code § 20-1522(a). In November 2022, DCWP published a 37-page report summarizing the results of the study. Compl. ¶ 2; *see* Decl. of Gabriel Gutierrez Ex. A. DCWP's study found that delivery workers earned an average of $14.18 per hour with tips and $7.09 per hour without tips. Decl. of Gabriel Gutierrez Ex. A at 17-18. DCWP's study also found that delivery workers' average hourly job-related out of pocket expenses for necessary equipment such as e-bikes and safety gear was $3.06, reducing their take home pay to $11.12 per hour with tips and $4.03 per hour without tips. *Id*. at 18, 21. The study found that delivery workers experience the highest rates of occupational injury and death of any occupation in the New York City region and that delivery workers who experience injuries often miss significant work time while recovering and incur significant medical expenses. *Id*. at 23-26. In spite of these risks, delivery workers classified as independent contractors do not receive workers' compensation coverage and often do not have health insurance. *Id*. at 26. The Delivery Worker Laws' minimum pay rate is designed to compensate delivery workers for their expenses and for the absence of benefits typically afforded workers classified as employees, allowing delivery workers to support themselves and their families and live with dignity. *Id*. at 37.

7

Motoclick has been violating the Delivery Worker Laws since they took effect on April 22, 2022. Compl. ¶ 1. Since that time, and as recently as April 2026, DCWP has received complaints about pay violations from at least 33 workers. *Id.*  ¶ 26; Decl. of Gabriel Gutierrez ¶ 6. Motoclick's noncompliance appears in its own records. For example, Motoclick's own "Independent Contractor Agreement" states that Motoclick pays workers $10 per hour – well below the delivery worker minimum wage. Compl. ¶¶ 46, 68. Workers' pay statements show that Defendants paid them far less than the minimum wage, did not remit tips and, on top of that, took illegal fees out of workers' pay that led them to net far less than even the amount Motoclick had promised. *Id*. ¶¶ 37, 39, 46. Some pay statements even reflected negative balances, meaning Motoclick calculated that these workers owed *Motoclick* money after working for the company – the workers earned nothing. *Id*. ¶ 41. Additionally, delivery workers provided DCWP with their WhatsApp communications with Defendants in which the workers repeatedly asked for pay for their work before Defendants blocked them from further communication without paying them. *Id*. ¶¶ 49, 83.

Upon receiving these complaints, DCWP reached out to Defendants to inform them of their obligations under the Delivery Worker Laws, including their obligation to pay workers the minimum pay rate. *Id*. ¶ 51. Rather than work with DCWP to come into compliance, Defendants ignored the agency's communications, responding only to baselessly request an exemption from the Delivery Worker Laws on September 10, 2024. *Id*. ¶¶ 52-53. On January 17, 2025, with no authority nor reason to exempt Motoclick, DCWP sent Defendants a Document and Information Request to investigate Motoclick's non-compliance with the Delivery Worker Laws. *Id*. ¶ 54. Defendants continued to ignore DCWP and did not cooperate with DCWP's investigation. *Id*. ¶ 55.

On January 15, 2026, Plaintiff filed a Complaint alleging that Motoclick engaged in a pattern or practice of violating New York City's Delivery Worker Laws. That same day, Mayor Mamdani and Commissioner Levine held a press conference to announce the lawsuit. As is standard for a government agency press conference announcing an investigation, lawsuit, or legal settlement, Mayor Mamdani, Commissioner Levine, and the City's press staff made various public statements related to the lawsuit about Motoclick's conduct. Decl. of Gabriel Gutierrez Exs. B, C (press release and accompanying social media post). These statements mirrored the allegations in the complaint, including *inter alia* allegations that Motoclick tricked workers into working on their platform with false promises (Compl. ¶¶ 30-32) and stole their pay and tips (Compl. ¶¶ 1, 39). The press conference was accompanied by a press release featuring video of the press conference and Instagram post that similarly mirrored the Complaint. Decl. of Gabriel Gutierrez Exs. B, C.

Motoclick filed its Answer to DCWP's Complaint on February 23, 2026, asserting three counterclaims based entirely on the City's statements to the press. Def.'s Countercl. ¶¶ 1-27. Motoclick's first counterclaim alleges that the City's press communications violated its right to procedural due process by issuing stigmatizing statements that caused Motoclick to suffer "loss of workers, business relationships, goodwill, and economic opportunity." *Id*. ¶ 8-9. Motoclick's second counterclaim alleges that the City violated its right to substantive due process by engaging in conscience-shocking conduct when it "publicly declar[ed] Defendant guilty of theft, exaggerate[ed] alleged damages, and threaten[ed] shutdown authority it did not lawfully possess[.]" *Id*. ¶¶ 12, 15. Motoclick's third counterclaim alleges that the City engaged in trade libel and injurious falsehood by issuing statements that "third parties relied on . . . in making commercial decisions concerning Defendant" which caused Motoclick to suffer "lost business relationships, lost revenue, and loss of business expectancy" as a result. *Id*. ¶¶ 25-27.

## ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss, a pleading must contain sufficient factual matter, accepted as true, so as to make a claim plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). A court is not obligated to accept as true legal conclusions couched as factual allegations. *See Iqbal*, 556 U.S. at 678. To meet the "facial plausibility" standard, a pleading must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. This standard requires a court to reject "threadbare recitals" of the elements of a cause of action "supported by mere conclusory statements," and requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. When a complaint pleads facts "that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Bell Atlantic*, 550 U.S. at 557).

Here, Motoclick's counterclaims do not contain sufficient facts, even if accepted as true, which would sustain a claim for violations of its procedural due process rights, substantive due process rights, or trade libel. Accordingly, all three of Motoclick's counterclaims should be dismissed.

**I: THE COURT MUST DISMISS THE FIRST COUNTERCLAIM BECAUSE MOTOCLICK DOES NOT ALLEGE A STATE-IMPOSED DEPRIVATION OF A PROTECTED RIGHT — ONLY THE REPUTATIONAL "DELETERIOUS EFFECTS" OF THE CITY'S STATEMENTS, WHICH IS INSUFFICIENT TO STATE A STIGMA PLUS CLAIM**

Motoclick's First Counterclaim fails because Motoclick does not allege that it experienced a state-imposed burden in addition to a stigmatizing statement. Instead, Motoclick only contends that the City's press communications caused it to suffer a "loss of workers, business relationships, goodwill, and economic opportunity" – the type of burden that, even if proved, the

10

Second Circuit has squarely held to be inactionable deleterious effects of reputational harm. Def.'s Countercl. ¶ 8; *see Sadallah v. City of Utica*, 383 F.3d 34, 39 (2d Cir. 2004). Accordingly, the First Counterclaim should be dismissed.

To prevail on its stigma plus procedural due process claim, Motoclick must show "(1) the utterance of a statement about it that is injurious to its reputation, that is capable of being proved false, and that it claims is false, and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement." *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (citation modified). While the Second Circuit has noted that "it is not entirely clear what the 'plus' is," it has concluded that "defamation is not by itself a deprivation . . . unless coupled with the termination of government employment 'or deprivation of some other legal right or status.'" *Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir. 1994) (*quoting Neu v. Corcoran*, 869 F.2d 662, 667 (2d Cir. 1989)). By contrast, "[d]eleterious effects flowing directly from a sullied reputation, standing alone, do not constitute a 'plus' under the 'stigma plus' doctrine." *Sadallah*, 383 F.3d at 38.

For example, in *Sadallah*, then-Circuit Judge Sotomayor reversed a District Court decision denying Defendants' motion to dismiss a procedural due process claim against the Mayor and City of Utica, holding that the Plaintiffs had failed to meet the stigma plus standard. 383 F.3d at 39. In that case, the Mayor made statements to the press alleging that Plaintiffs' business was in disrepair, out of compliance with building codes, had chemicals stored in the food preparation area, and accused plaintiffs of obtaining a "sweetheart deal" of a lease from the city. *Id.* at 36. The Court held that plaintiffs' claims that the Mayor's statements damaged their "business reputation" and led to a loss of "good will in their business" that "discourage[d] customers from availing themselves of Plaintiffs' facility" and caused "irreparable financial harm" failed to state a stigma

11

plus claim. *Id.* at 38-39. Justice Sotomayor explained that, even assuming defendants' statements amounted to defamation, the harms were not "in addition to the alleged defamation" but rather were "deleterious effects" of it. *Id*. at 39 (internal citations and quotations omitted).

Justice Sotomayor's reasoning fits perfectly here. Even accepting Motoclick's allegations as true that DCWP's "press release" and "press event" accusing defendants of engaging in a "scam" and having "stolen" workers' pay caused a "loss of workers, business relationships, goodwill, and economic opportunity," these allegations do not satisfy the "plus" element required to maintain a stigma plus claim because they are merely "deleterious effects" of the alleged defamation. Def.'s Countercl. ¶¶ 2-3; *Sadallah*, 383 F.3d at 39; *see also Sibiski v. Cuomo*, 08 CV 3376 SJF ARL, 2010 WL 3984706, at *8 (E.D.N.Y. Sept. 15, 2010) (motion to dismiss stigma plus claim granted where Attorney General's press release led to termination of the plaintiff's publishing contract, holding that the contract termination was a "deleterious effect" of reputational damage, not a state-imposed burden). Courts dismiss procedural due process claims unless the government's alleged defamatory statements caused a specific deprivation of a protected right. *See, e.g.*, *Greenwood v. New York, Off. of Mental Health*, 163 F.3d 119, 121, 124 (2d Cir. 1998) (plaintiff had a due process property interest in clinical staff privileges at a state hospital, and suffered a deprivation because hospital doctors' defamatory statements caused her to lose them). Here, no law confers any right on Motoclick to which it can claim entitlement or deprivation, and so Motoclick cannot satisfy the "plus" element of its stigma plus claim.

The Court should dismiss Motoclick's stigma plus claim. It identifies no state-imposed burden in addition to a stigmatizing statement, such as the revocation of a privilege or termination from public employment. The harms it alleges – lost workers, lost business relationships, and diminished goodwill – are vague and precisely the kind of reputational harms

12

that the Second Circuit held insufficient in *Sadallah* and that courts in this Circuit have consistently held failed to satisfy the "plus" element of stigma plus claims. 383 F.3d at 38. Accordingly, the First Counterclaim should be dismissed.

### II: THE COURT MUST DISMISS THE SECOND COUNTERCLAIM BECAUSE MOTOCLICK NEITHER IDENTIFIES A PROTECTED RIGHT NOR ALLEGES CONDUCT THAT SHOCKS THE CONSCIENCE TO STATE A SUBSTANTIVE DUE PROCESS CLAIM

Motoclick's Second Counterclaim fails because it does not and cannot allege that the City deprived it of a protected right or engaged in conscience-shocking conduct. Def.'s Countercl. ¶¶ 11-15. Substantive due process "is the right to be free of arbitrary government action that infringes a protected right." *O'Connor v. Pierson*, 426 F.3d 187, 200 n.6 (2d Cir. 2005). To sustain a claim that a party's Fourteenth Amendment substantive due process rights have been violated, that party must plead 1) that government action infringes a protected right, and 2) the state action was so egregious so as to shock the conscience. *Id*. "Action that merely harms one's professional or business interests does not, alone, infringe a federally-protected right, and thus does not implicate due process." *Montalbano v. Port Auth. of New York & New Jersey*, 843 F.Supp.2d 473, 483 (S.D.N.Y. 2012) (quoting *Giammatteo v. Newton*, 452 F.App'x 24, 30 (2d Cir. 2011)). Put another way, "[t]here is no substantive due process right to operate a business, much less a substantive due process right to operate a business free from government regulation." *689 Eatery Corp. v. City of New York*, 716 F.Supp.3d 88, 204 (S.D.N.Y. 2024), *aff'd on other grounds sub nom. 557 Ent. Inc. v. City of New York*, No. 24-621, 2025 WL 1873473 (2d Cir. July 8, 2025).

The standard for succeeding on a substantive due process claim is high. Substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit seeking review of administrative

action." *Natale v. Town of Ridgefield*, 170 F.3d 258, 263 (2d Cir. 1999). Substantive due process

standards are violated only by conduct that is so "outrageously arbitrary as to constitute a gross

abuse of governmental authority." *Id*. "[C]onduct intended to injure in some way unjustifiable by

any government interest is the sort of official action most likely to rise to the conscience-shocking

level." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

### A. Motoclick has no protected right to operate its business free from reputational harm caused by government speech

Motoclick's Second Counterclaim fails because it does not articulate a protected

right. Def.'s Countercl. ¶¶ 11-15. To the extent Motoclick's pleadings can be read to allege one, it

appears to be a purported right to operate a business free from reputational harm caused by

government speech informing the public about the business' unlawful practices. Recent Second

Circuit rulings have declined to recognize such a right. *Giammatteo*, 452 F.App'x 24. Accordingly,

Motoclick's substantive due process counterclaim must be dismissed.

*Giammatteo* illustrates why Motoclick's claim does not meet the substantive due

process standard. In *Giammatteo*, plaintiff-owner of a physical therapy practice sued the

Connecticut Department of Health after it prosecuted her for engaging in substandard physical

therapy practice. 452 F.App'x at 26. Plaintiff alleged a violation of her substantive due process

rights because the prosecution caused "harm to her professional reputation and relationship with

patients and employees[.]" *Id*. at 29. The Second Circuit affirmed a decision granting a motion to

dismiss the physical therapist's substantive due process claim, holding that she did "not allege

facts that, taken as true, would permit the court to draw the reasonable inference that defendants

deprived her of any federally-protected right." *Id*. The court reasoned that government "[a]ction

that merely harms one's professional or business interests does not, alone, infringe a federally-

14

protected right, and thus does not implicate due process." *Id*. at 30.  The principles behind the holding in *Giammatteo* apply here. As in *Giammatteo*, the government is prosecuting a business for violating industry regulations. And like the plaintiff in *Giammatteo*, Motoclick has not identified any protected right that the government allegedly infringed. Its substantive due process claim should similarly be dismissed.

The court came to the same conclusion regarding the plaintiffs' business interests in *689 Eatery Corp.*, 716 F.Supp.3d at 204. In that case, plaintiff-owners of gentlemen's clubs and adult bookstores sued the City after a zoning law change restricted where these entities could operate. Plaintiffs contended, among other things, that the zoning law amendments would force them to change, move, or close down entirely and left them with insufficient alternative locations to operate. *Id*. at 132, 171. Addressing both plaintiffs' procedural and substantive due process claims, the Court held that "[p]laintiffs have not established that they have a protectable property right to purvey sexually explicit materials in the places where they currently are located." *Id*. at 203. The Court reasoned that there was "no substantive due process right to operate a business, much less a substantive due process right to operate a business free from government regulation." *Id*. at 204. Despite its assertions to the contrary, Motoclick similarly has no right to operate as a delivery service without complying with the Delivery Worker Laws.

### B. Announcing a lawsuit in press communications does not shock the conscience

Motoclick's failure to identify a protected right that the City infringed is itself fatal to its Second Counterclaim. But, even if Motoclick had successfully articulated such a right, its substantive due process claim still fails. Substantive due process claims require government conduct that shocks the conscience – a high standard within which a narrow range of government

conduct falls. The Second Circuit has explained that this high standard requires government conduct that is a "malicious and sadistic" abuse of power that is intended to oppress or cause injury. *Velez*, 401 F.3d at 94 (internal quotation omitted). Put another way, the government's conduct must be "brutal and offensive to human dignity[.]" *Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir. 2002) (internal citations and quotations omitted).

Motoclick's inability to plead facts that meet this high threshold dooms its Second Counterclaim. Motoclick contends that Plaintiff's press statements "publicly declaring Defendant guilty of theft, exaggerating alleged damages, and threatening shutdown authority" are "conscience-shocking, and a gross abuse of executive power." Def.'s Countercl. ¶ 12. Yet, press communications of this nature are routine and serve a governmental interest in informing the public about their rights under the law and informing regulated entities about the consequences of failing to follow the law. The press communications here informed delivery workers of their right to, among other things, a minimum pay rate. Decl. of Gabriel Gutierrez Ex. B, 2. They also "Warn[ed] Delivery Apps to Comply With Worker Protections" and informed them that there are significant consequences for committing wage theft by paying workers less than the full minimum pay rate and tips to which they are legally entitled. Decl. of Gabriel Gutierrez Ex. B, 2. There is nothing exaggerated about stating that Motoclick owes workers "millions in stolen pay and damages" particularly where the damages associated with failing to pay the minimum pay rate include at least three times the amount of unpaid wages, along with full backpay and civil penalties. Decl. of Gabriel Gutierrez Ex. B, 2; N.Y.C. Admin. Code §§ 20-1508(a)(1), (a)(3)(c), 20-1509. There is also nothing exaggerated about stating that the City has authority to seek an injunction to prevent Defendants from operating as a delivery service in New York City as a consequence for their violations of law – it does. N.Y.C. Admin. Code § 20-1510.

Public officials frequently hold press conferences to inform the public of investigations, lawsuits, legal settlements and their authority to enforce the law. While Defendants' treatment of their workers is appalling, and they may prefer it not to be exposed, this does not give rise to a substantive due process claim. Courts agree. In *Malapanis*, then-Attorney General Richard Blumenthal held a press conference and issued a press release declaring that the state was initiating a civil action against a computer store and its owner for breaching contracts with the state and "bilking the State out of more than half a million dollars[.]" 340 F.Supp.2d at 186. The store and its owner brought a substantive due process claim contending that the press release contained false information and accused them of "likely committ[ing] larceny." *Id.* at 187. There, as here, the Attorney General's statements were not conscience-shocking, particularly where they "tracked the charges that gave rise to the state civil suit against" plaintiff. *Id*. at 196-97. As a result, the Court granted defendants' motion to dismiss the substantive due process claims. *Id*.; s*ee also United States v. Walters*, 910 F.3d 11, 28 (2d Cir. 2018) (an FBI agent leaking confidential grand jury information to the press about defendant was not conscience-shocking). Because it is not conscience-shocking for a public official to give a press conference about a lawsuit, Motoclick's substantive due process counterclaim should be dismissed.

### III: THE COURT MUST DISMISS THE THIRD COUNTERCLAIM BECAUSE THE CITY'S STATEMENTS ARE PROTECTED BY THE FAIR AND TRUE REPORTING PRIVILEGE UNDER NEW YORK CIVIL RIGHTS LAW § 74

Motoclick's Third Counterclaim fails because the City's statements about Motoclick's conduct do not constitute trade libel. Rather, they are fair and true reports of the City's lawsuit against and investigation of Motoclick, and are therefore barred under Section 74 of the New York Civil Rights Law. *Alzheimer's Foundation of America, Inc. v. Alzheimer's Disease and*

17

*Related Disorders Ass'n, Inc.*, 796 F.Supp.2d 458, 471 (S.D.N.Y. 2011) (granting motion to dismiss a trade libel / injurious falsehood claim on Section 74 grounds).

New York Civil Right Law Section 74 prohibits civil actions based on "the publication of a fair and true report of any judicial proceeding, legislative proceeding, or other official proceeding[.]" N.Y. Civ. Rights Law § 74. The Section 74 privilege is absolute and cannot be defeated by allegations of malice or bad faith. *Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 176 (2d Cir. 2021). To determine whether a statement is a "fair and true report of a judicial proceeding," courts evaluate whether an "ordinary reader would plainly understand that the challenged statements . . . are relaying information relating to the underlying investigations and proceedings."*1st Amendment Praetorian v. New York Times Company*, No. 1:23-CV-00012 (MKV), 2025 WL 949575, at *19 (S.D.N.Y. Mar. 28, 2025) (granting motion to dismiss defamation claims because they were barred by Section 74, among other reasons); *see also Lively v. Wayfarer Studios LLC*, No. 24-CV-10049 (LJL), 2026 WL 905447, at *69 (S.D.N.Y. Apr. 2, 2026) (holding the same). The words of the publication (and their relation to the underlying litigation) are construed liberally, in their context, rather than "parsed and dissected on the basis of precise denotative meanings." *Holy Spirit Ass'n for Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 68 (1979) (newspaper article reporting on unverified intelligence documents released by congressional subcommittee as if the reports were confirmed did not render the reporting unfair).

The privileged protection for reporting on "judicial proceedings" extends to announcements and press releases of government prosecutions. *Salis v. City of New York*, 81 Misc. 3d 1209(A), at *5 (Sup. Ct. Kings Cnty. 2023) ("The DA's Office press release is protected from litigation under Civil Rights Law § 74 as 'a fair and true report of a judicial proceeding.'") (citation

modified); *Golden v. City of New York*, 24 CIV. 5759 (LAK) (GS), 2025 WL 2055697, at *14 (S.D.N.Y. July 7, 2025) (holding that prosecutors were "afforded immunity under Civil Rights Law § 74 for the issuance of [a] Press Release" announcing an indictment). The protection for "official proceedings" extends to reporting on government agency investigations and even announcements of agency investigations. *Freeze Right Refrigeration*, 101 A.D.2d 175, 181 (1st Dep't 1984) (holding that defamation claims against news outlet were predicated on fair and true reporting of a Department of Consumer Affairs (now Department of Consumer and Worker Protection) investigation).

The Mayor and Commissioner provided sufficient context in their press conference to direct ordinary readers to the underlying litigation. *Lively* is instructive here: in that case, an attorney made statements referencing his clients' view of a complaint filed the day before. *See Lively*, 2026 WL 905447 at *69. The court noted that "[t]he fair report privilege applies to a party who communicates a complaint to the press before that complaint is publicly filed," because reporters understand that the attorney is referencing litigation. *Id.* (internal citations omitted). In *Lively*, the attorney's reference to the underlying "claims" was enough to show that his statements concerned the recently filed litigation. *Id.* It is even clearer here than in *Lively* that the Commissioner and Mayor were summarizing the allegations made in the City's lawsuit. The excerpt from the press conference, posted to Instagram, begins with the words "DCWP filed a lawsuit against Motoclick . . ." Decl. of Gabriel Gutierrez Ex. C. For good measure, the Instagram video links to DCWP's website where the press release was published, which also places each statement in its appropriate context as a summary of an allegation in DCWP's recently filed litigation. Decl. of Gabriel Gutierrez Exs. B, C. The written press release itself begins with the words, "[Today] a case was filed on behalf of the City . . . against predatory delivery app

Motoclick." *See* Compl. (filed January 15, 2026 at 8:51 AM); Decl. of Gabriel Gutierrez Exs. B, C. This context makes it unmistakable that the statements concerned the instant litigation.

Because Motoclick cannot overcome this context, it relies on isolated headlines, captions, and phrases to make its argument. Def.'s Countercl. ¶¶ 2-5, 7. However, this approach is unsupported. In *Golden*, the court analyzed whether a prosecutor's press release, read in full, was true and accurate reporting of the underlying indictment. 2025 WL 2055697, at *13. Pushing back on the claimant's argument that the headline of the release on its own constituted evidence of defamatory statements, the *Golden* court emphasized that it was inappropriate for the claimant to "ignore[] the text of the Press Release and instead focus[] on the headline." *Id.* The court found that the full text of the press release gave the proper context and connected each statement to the actual charges at issue. *Id.* at *14.

Like the claimant in *Golden*, Motoclick's attempt to cherry-pick its way to a libel claim is not viable. Motoclick complains that the caption to the January 16 Instagram post, "Motoclick and its CEO tricked New Yorkers into working for their platform with false promises and then STOLE their tips and earnings" is defamatory. Def.'s Countercl. ¶ 4; Decl. of Gabriel Gutierrez Ex. C. Yet, the Instagram video alongside the caption – and the press release to which it links – make clear that the caption is referencing specific allegations, all of which can be found in the complaint (namely paragraphs 1, 31, 33, and 37 through 39, which discuss Motoclick and Salinas' efforts to mislead workers, and their "misappropriation" of worker pay.) Compl. ¶¶ 1, 31, 33, 37-39; Decl. of Gabriel Gutierrez Ex. C. Especially given that such statements must be "liberally" construed as fair reporting and given "broad" protection, Motoclick cannot credibly allege that an ordinary reader of the Instagram post or press release would have been ignorant of the underlying litigation. *Golden*, 2025 WL 2055697, at *14 (internal citations

omitted). Just as in *Golden*, viewing the alleged defamatory statements in context clarifies that they are merely repackaged allegations from the complaint.

Finally, even if Motoclick can show that some of the statements DCWP made cannot be fairly connected to the complaint in this case, Section 74 still protects DCWP's communications as a summary of its own investigative efforts. The decision in *Freeze Right Refrigeration* illustrates how courts apply Section 74 to reporting on a government investigation. 101 A.D.2d at 183. In that case, the New York Times reported on an undercover investigation conducted in tandem between the newspaper and DCWP (at that time, the Department of Consumer Affairs). *Id*. The court found that the reporting was protected from defamation claims, even though the article "precede[d] the release of the official [investigation] findings." *Id*. at 182. As the court explained, "[e]ven the announcement of an investigation by a public agency, made before the formal investigation has begun, is protected as a report of an official proceeding within the contemplation of the statute." *Id*. Here, DCWP's press conference announced the culmination of a years-long investigation, resulting in litigation. *See* Compl. ¶ 26 (DCWP began investigating Motoclick in February 2024). Any statement made at the press conference is, if not directly correlated to allegations in the complaint filed that morning, certainly attributable to the underlying investigation conducted by the Commissioner's own agency; the City's statements are thus protected as a summary of an official agency investigation. *Freeze Right*, 101 A.D.2d at 182. ("It is beyond dispute that [DCWP]… is an official body whose investigation… constitutes an official proceeding within the meaning of [Section 74].")

Because the City's statements surrounding the lawsuit are protected as fair and true reporting both on a judicial proceeding *and* an official proceeding, Motoclick's Third Counterclaim fails as a matter of law.

21

**IV: THE COURT MUST DISMISS THE THIRD COUNTERCLAIM BECAUSE MOTOCLICK FAILS TO PLEAD SPECIAL DAMAGES WHICH IS REQUIRED TO MAINTAIN A TRADE LIBEL CLAIM**

Motoclick's Third Counterclaim also fails because it does not identify with accuracy and particularity actual losses resulting from the City's statements. Motoclick's bare recitation that it "suffered special damages, including lost business relationships, lost revenue, and loss of business expectancy" is not enough. Def.'s Countercl. ¶ 26; *see Rall v. Hellman*, 284 A.D.2d 113, 114 (1st Dep't 2001). For this reason alone, Defendant's trade libel claim should be dismissed.

Under New York Law, trade libel or "injurious falsehood" is defamation of a product or good rather than a person. *Bilinski*, 96 F.Supp.3d at 51, n.15 (S.D.N.Y. 2015). To state a claim for trade libel, a party must adequately plead (1) falsity of the allegedly defamatory statement, (2) publication to a third person, (3) express or implied malice and (4) special damages. *Enigma Software Grp. USA, LLC v. Bleeping Computer LLC*, 194 F.Supp.3d 263, 291 (S.D.N.Y. 2016) (citation altered and internal citations omitted); *Sandler v. Simoes*, 609 F.Supp.2d 293, 302 (E.D.N.Y. 2009) (internal citations omitted). Pleading special damages requires identifying pecuniary loss with accuracy and particularity sufficient to identify actual losses. *Enigma*, 194 F.Supp.3d at 292; *Kasada, Inc. v. Access Cap., Inc.*, No. 01 CIV. 8893 (GBD), 2004 WL 2903776, at *16 (S.D.N.Y. Dec. 14, 2004). When special damages are caused by a reduction in customers, the party must identify both the specific customers and associated monetary amounts lost. *Bilinski*, 96 F.Supp.3d at 51. Pleading damages with no attempt at itemization amounts to pleading general rather than special damages. *Id*.

Here, Motoclick alleges that it suffered "special damages, including lost business relationships, lost revenue, and loss of business expectancy, the precise amount of which will be

22

determined through discovery," but does not make any attempt to itemize its losses. Def.'s Countercl. ¶ 26. Courts have routinely found that similarly thin pleadings failing to identify special damages to be insufficient. *See e.g.*, *Rall*, 284 A.D.2d at 114 (affirming decision that granted motion to dismiss defamation claim where plaintiff failed to identify a single customer lost or particularize the amount of costs incurred in averting reputational damage); *Bilinski*, 6 F.Supp.3d at 51 (granting motion to dismiss trade libel claim where plaintiff-art collector failed to identify the customers from whom it lost art sales as a result of art foundation's defamatory press release). And Motoclick's blanket assertion that special damages will be demonstrated in discovery does not salvage its claim. *N. Am. Olive Oil Ass'n v. D'Avolio Inc.*, 457 F.Supp.3d 207, 231 (E.D.N.Y. 2020) (holding that a general allegation of damages which would be shown in discovery was insufficient to plead special damages).

Because Motoclick has not pled special damages with accuracy and particularity, the Third Counterclaim should be dismissed.

23

## CONCLUSION

For the reasons set forth above, Motoclick's counterclaims fail to state a cause of action and should be dismissed in their entirety.

Dated:        New York, New York
              May 18, 2026

                                  STEVEN BANKS
                                  Corporation Counsel of the City of New York
                                  Attorney for Plaintiff
                                  100 Church Street
                                  New York, New York 10007
                                  Tel: 212-436-0274


                          By:     _____
                                  Gabriel Gutierrez
                                  Special Assistant Corporation Counsel

24

## WORD COUNT CERTIFICATION

Pursuant to Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, I hereby certify that the total number of words in this memorandum, excluding the caption, table of contents, table of authorities, signature block, certificate of service, and word count certification is 5,841.

Signed: _____

Gabriel Gutierrez
Special Assistant Corporation Counsel

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Signed:     _____

Gabriel Gutierrez
Special Assistant Corporation Counsel

26