UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

THE CITY OF NEW YORK,

                              Plaintiff,

                                                    26-CV-01287(VSB)(SDA)

        -against-

PATIO DELIVERY, INC. d/b/a MOTOCLICK,
and JUAN PABLO SALINAS SALEK,

                              Defendants.

-------------------------------------------------------------------------x

## **STIPULATED AGREEMENT FOR THE PRODUCTION
OF ELECTRONICALLY STORED INFORMATION**

WHEREAS, the goal of Rule 1 of the Federal Rules of Civil Procedure (the "Federal Rules") is the "just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1;

WHEREAS, Rules 26(b)(1) and 26(g)(1)(B)(iii) of the Federal Rules require the City of New York (the "City") and Patio Delivery, Inc. ("Motoclick") (collectively the "Parties") and the Court to limit discovery to what is both relevant and proportional to the needs of the case, "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," Fed. R. Civ. P. 26(b)(1);

WHEREAS, Rule 26(f) of the Federal Rules states that the Parties must develop a proposed discovery plan that states the Parties' views and proposals on, among other things, "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced," Fed. R. Civ. P. 26(f)(3)(C);

WHEREAS, in compliance with Rule 1 and 26 of the Federal Rules, the Parties mutually seek to reduce the time, expense, and other burdens of discovery of certain electronically stored information ("ESI") and privileged materials, as described further below, and to better define the scope of their obligations with respect to such information and materials in this action;

WHEREAS, the Parties therefore are entering into this Stipulation with the request that the Court enter it as an Order;

**IT IS HEREBY STIPULATED AND AGREED** by and through the Parties' respective counsel as follows:

1.      General Terms. This stipulated and so-ordered agreement (the "Stipulation and Order") governs the discovery of electronically stored information ("ESI") in this Litigation.  By entering into this Stipulation and Order, the Parties do not waive any defenses or objections to any requests for production of documents, all of which are expressly reserved.

2.      Preservation.

   a.  The Parties acknowledge their duty to conduct a reasonable inquiry to identify and preserve documents and information in their possession, custody, and control that they know, or should know, is relevant to this litigation. The Parties also agree that nothing in this protocol shall expand their preservation duties beyond what is reasonable and proportional to what is at issue in the case.

   b.  This agreement does not obligate any Party to segregate or collect potentially relevant documents unless the Party has a reason to anticipate that, absent such actions, relevant information is likely to be lost during the pendency of this matter.

   c.  The parties agree to disclose the dates, contents, and recipients of litigation hold communications upon reasonable request by the opposing party.

3.  Production Sources. The Parties agree to collect ESI and non-ESI from the sources below for the Relevant Timer Period to the degree that they are in the possession, custody and control of a Party, which shall not waive any defenses or objections to any requests for production of documents, all of which are expressly reserved.

   a.  The City's production sources include:

| Plaintiff's Source | Description of Relevant Content |
|---|---|
| Microsoft Dynamics and Microsoft Office | Documents and information workers provided to DCWP in complaints, including narratives, pay statements, earnings summaries, screenshots of the Moto Driver app, WhatsApp communications with Defendants, current and previous versions of publicly-available regulatory materials, guidance documents, and data specifications relating to the Delivery Worker Laws. |

b. Motoclick's production sources include:

| Source | Vendor / Platform | Data Description |
|---|---|---|
| Moto Driver app | Patio Delivery / proprietary | Trip records (6 R.C.N.Y. § 7-805(c)(4)), payment calculations, (6 R.C.N.Y. § 7-805(c)(5)) fee deductions (6 R.C.N.Y. § 7-805(c)(5)(viii)), merchant fees charged (6 R.C.N.Y. § 7-805(d)), gratuity data (6 R.C.N.Y. § 7-805(c)(4)(xi), (5)(vii)), deactivation logs (6 R.C.N.Y. § 7-805(c)(8)), compensation data (6 R.C.N.Y. § 7-805(c)(4)(vi), (xii), (5)(vi)), on-call time logs (6 R.C.N.Y. § 7-805(c)(6)), trip time logs (6 R.C.N.Y. § 7-805(c)(6)) |
| WhatsApp | Meta | Worker communications re: assignments, pay, complaints, deactivations; group chats managed by WhatsApp Administrators |
| Google Cloud | Google LLC | Cloud infrastructure for Moto Driver app backend |

| Source | Vendor / Platform | Data Description |
| --- | --- | --- |
| DreamHost (web hosting) | DreamHost | Web hosting for Motoclick platform; account in name of Juan Pablo Salinas at 309 Baldwin Ave, Jersey City NJ |
| Citibank business account | Citibank (Citi CBO Services) | Business checking account for Patio Delivery, Inc. at 309 Baldwin Ave Apt 1, Jersey City NJ 07306; wire transfers to workers |
| Personal Chase / Zelle accounts | JPMorgan Chase / Zelle | Personal bank accounts of Juan Pablo Salinas Salek used to pay workers directly |
| Microsoft Azure | Microsoft Corporation | Cloud infrastructure and storage, databases; SQL database |
| Amazon Web Services (AWS) | Amazon Web Services, Inc. | Cloud storage (account 136518551682) |
| Facebook / social media | Meta / other platforms | Worker recruitment materials, job postings, worker communications |
| Emails for web domain motoclickapp.com, e.g., logistic@motoclickapp.com; other personal or business email domains | Amazon Web Services, Inc. | Vendor, worker, company, business communications |
| Google Workspace / Gmail | Google LLC | Vendor, worker, company, business communications |
| IC Agreement files | Patio Delivery / Amazon Web Services, Inc./Google Workspace | Independent Contractor Agreements executed with workers |
| IRS / tax filings | IRS / preparers | Forms 1120 (2022, 2023, 2024), Form 5472 (2022), Form 8879-CORP; prepared by Onpoint Business Solutions (2022) and Robert McConnell CPA (2023–2024) |

| Source | Vendor / Platform | Data Description |
|---|---|---|
| Accounting records (Onpoint / McConnell CPA) | Onpoint Business Solutions; Robert McConnell CPA | Financial statements, payroll records, corporate accounting documents |
| Code repositories | GitHub and other code repositories | Programming code |
| Delivery Worker Data File | Amazon Web Services, Inc. | Delivery worker first name, last name, phone number, email address, internal identifier, preferred language, first date retained, and last date retained. See 6 R.C.N.Y. § 7-805(c)(1) |
| Delivery Worker Payroll | Amazon Web Services, Inc. | Delivery worker payroll records. See 6 R.C.N.Y. § 7-805(c)(5)-(6) |

4. <u>Production Custodians</u>. The Parties agree that potentially relevant data and records will be preserved and collected from the custodians identified below. The City reserves the right to request that data and records be preserved and collected from additional

custodians identified, to the extent such individuals possess potentially relevant data or records not otherwise captured through the named custodians.

a. The City's custodians include:

| Custodian | Title |
| --- | --- |
| Gabriel Gutierrez | Staff Counsel, DCWP |
| Debra Halpin | Assistant Commissioner for Creative Services, External Affairs, DCWP |

b. Motoclick's custodians include:

| Custodian | Title |
| --- | --- |
| Juan Pablo Salinas Salek | Founder / CEO (D000043) |
| Angela Valeria Castro Tapia | Co-Founder / COO (D000043, D000011) |
| Roy Favio Villarroel | CTO (D000043, D000011) |
| Jordi Chaparro | CFO (D000043) |
| Pablo Benjamin Heredia Ruiz | Software Service Provider (D000001) |
| Paula Salek | Finance / Assistant Manager |
| Alan Chaparro | CMO |
| Solimar Andia Sánchez | Marketing Executive |

| Custodian | Title |
|---|---|
| Jim Requena | Scrum Master |

5. <u>Production Format</u>. Unless otherwise ordered by the court or agreed to by the Parties, the Parties shall produce ESI and non-ESI in accordance with the annexed ESI Production Specifications (annexed as Appendix A).

6. <u>Database Exporting</u>. Data required to be maintained by N.Y.C. Admin. Code § 20-1506 and 6 R.C.N.Y. § 7-805 must be produced as structured data in a machine readable format, inclusive of all record identifiers, keys, or linking variables necessary to properly interpret the responsive data.

   Data required to be reported by 6 R.C.N.Y. § 7-805(d) must be produced in the manner specified by the Delivery Service Uniform Reporting Guides. Submissions covering periods between January 1, 2022 and December 31, 2023 must be produced in the manner specified in the December 2023 Uniform Reporting Guide for Third-Party Food Delivery Services and Third-Party Courier Services. Submissions covering the period spanning January 1, 2024 through present must be produced in the manner specified in the January 2026 Delivery Service Uniform Reporting Guide.

   To the extent Defendants have not maintained required data, or have maintained data inconsistent with the specifications outline in N.Y.C. Admin. Code § 20-1506, 6 R.C.N.Y. § 7-805, and the Uniform Reporting Guides, the Parties shall meet and confer to agree on a reasonably useable production format before that category of ESI is produced. If the Parties are unable to reach agreement following a meet and confer, either Party may seek the Court's assistance.

7. <u>Production Timing</u>. The timing of document and ESI production shall be governed by the Court's Case Management Order and any subsequent orders of the Court. The Parties may make productions on a rolling basis consistent with the Case Management Order.

8. <u>Decryption</u>. The Parties will make reasonable efforts to ensure that documents produced in native form are decrypted (or that passwords are supplied), but the Parties have no duty to identify encrypted documents prior to production.

9. <u>Privilege Logs</u>.

   a. The Parties will log any fully withheld responsive privileged material, including documents produced as withheld for privilege slip-sheets, with the exclusion of the following categories:

      i. The Parties will not log any documents exchanged with counsel.

      ii. The Parties will not log any documents that have been produced with privilege redactions provided that the privilege type is listed on the

redaction itself and information providing sufficient context is left unredacted and/or provided in the DAT file.

b. The Parties will log only the topmost (last in time) email in a chain.

c. The Parties will log the documents in ascending date order, logging privileged family members one after the other. Any subsequent logs will be logged the same way starting with the next available Privilege Log ID.

d. The Parties agree to provide a privilege log with the following automated fields for each withheld document – any field that contains privileged information may be redacted/revised:

    i. Privilege Log ID

    ii. Bates Number (if produced as a slipsheet) or other unique identifier

    iii. Document Type

    iv. Date (sent/authored)

    v. From

    vi. Author

    vii. To

    viii. Cc

    ix. Bcc

    x. General Subject Matter (Subject line/File Name)

    xi. Privilege Type (ACC/AWP/DP/Law Enforcement, etc.)

    xii. Privilege Description

e. The parties agree that certain categories of documents may be sufficiently numerous and uniform in character that they may be logged categorically rather than document-by-document, subject to the opposing party's right to challenge the sufficiency of any categorical entry. Any party seeking to log documents categorically shall identify the category with sufficient particularity to allow the opposing party to assess the privilege claim. All other withheld documents shall be logged individually.

f. The Parties agree to exchange privilege logs and any related declarations on a rolling basis, no later than fourteen days after making a production. If the Responding Party becomes aware that it will need more time to comply, it will promptly reach out to opposing counsel to meet and confer on a revised date.

g. The Parties must raise any privilege log issues within 30 days after the production of the privilege log, and if they fail to do so, waive any rights to raise them after this date.  Once a Party raises any issues related to the privilege log within 30 days of its production, the Parties must meet and confer within one week of the issue being identified to try and resolve the issue.

10. <u>Non-Responsive Redactions</u>. Within an otherwise responsive document, non-responsive content that is also either sensitive or privileged may be redacted.  Non-responsive content that provides necessary context for understanding the document will not be redacted unless it is privileged.  Redactions applied for this reason shall be labeled with the basis for the redaction ((*e.g.,* REDACTED – NR).

11. <u>Treatment of Families</u>.  Parent-child relationships (e.g., the association between emails and attachments) will be preserved.  Because full families, parents and children (e.g., emails and corresponding attachments), should be produced together, if a document within a responsive family is fully withheld for privilege or non-responsiveness, a Bates-stamped, single page TIF placeholder indicating either "Document Withheld for Privilege" or "Document Withheld for Non-Responsiveness" should be included as the corresponding image for the withheld file.  This information should also be reflected in the Contains Slip Sheet and Slip Sheet Language fields in the .DAT file.

12. <u>Search and Review Methodology</u>.

a. The Parties recognize that the Producing Party is in the best position to determine how to search for, review, and produce its own ESI.  *See The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production*, 19 Sedona Conf. J. 1 (2018).

b. The Producing Party shall develop appropriate criteria that it intends to use for collecting and/or searching ESI and disclose such criteria to the Requesting Party by July 22, 2026.  For email, this disclosure should include the names of email custodians, the date range, and search terms, if applicable.  Thereafter, the Parties will meet and confer in good faith to reach agreement on the criteria to be used by the Producing Party.  If the Parties are unable to reach agreement, the Requesting Party may seek appropriate relief from the court within forty-five days of the Producing Party's initial disclosure of criteria. If no such relief is sought, the Producing Party may proceed with the disclosed search, review, and production process.

c. The Producing Party has the right to fully review its ESI for responsiveness, privilege, confidentiality, and personally identifiable information prior to production of responsive, non-privileged documents.  In addition, the Producing Party may use any appropriate tool or technology to conduct its review, including technology assisted review, as long as the review is conducted in a defensible manner.

13. Non-Party Subpoenas. Non-parties responding to discovery requests shall not be subject to this Stipulation and Order.  This provision shall not limit a Party's right to request a particular form of production when serving document subpoenas on non-parties.

14. Subsequently Joined Parties. Parties joined to this action after the entry of this Stipulation and Order shall presumptively be subject to its terms, however, subsequently joined parties may seek modification of this Stipulation and Order either through further written agreement of all Parties, or upon a showing of good cause, by application to the Court on notice to the other Parties.

15. Process for Amending. This Stipulation and Order may be changed only by further agreement of the Parties in writing or by Order of the Court and is without prejudice to the right of any Party, upon a showing of good cause, to seek modification of this Stipulation and Order by application to the Court on notice to the other Party.

16. Data Security. The Parties shall use reasonable measures to transfer, store, and maintain the documents and information exchanged in this action to prevent any unauthorized disclosure and  maintain the security and integrity of electronic data and files.

**STIPULATED TO:**

By: _____

  John M. De Vito, Jr.
  The City of New York
  *Attorney for Plaintiff*

By: _____

  Paul Goodman
  Cyruli Shanks & Zizmor, LLP
  *Attorney for Defendant Patio Delivery, Inc.*

Dated: New York, New York
  June 22, 2026

Dated: New York, New York
  June 22, 2026

**SO ORDERED:**

Dated: June 23, 2026
  New York, New York

_____

**STEWART D. AARON**

United States Magistrate Judge

# Appendix A

**If compliance with these specifications is not possible or would cause undue burden, the parties should meet and confer to discuss and confirm the format of production *prior to* collection, review, and production.**[1]

## General Specifications

Unless otherwise specified, documents should be converted and produced as single-page, black and white .TIF images with a corresponding image load file provided in Opticon (Concordance Image) format. A unique production number ("Bates stamp") should be branded on each .TIF image along with its appropriate confidentiality designation, if any. Upon reasonable request, the producing party will produce documents in color on an as-needed basis to assist with readability.

Any file that is specifically requested in native format or that cannot be converted to .TIF should be produced in its original native format with a link to the native file included in the **Native Link** field within the .DAT file. A Bates-stamped, single-page .TIF placeholder indicating that the file was produced natively should be included as the corresponding image for the file that cannot be converted. The native file should be renamed to reflect the Bates number assigned to the corresponding .TIF placeholder. Some examples of files that should be provided in their native format are spreadsheets, multimedia files, and technical drawings.

All associated metadata should be produced in a .DAT load file with standard Concordance delimiters. The included chart ("Requested Metadata Fields for ESI") contains the fields that should be provided in the .DAT file.

For each produced document, all associated text (extracted or OCR) should be provided in a text file named after the starting Bates number of the document. There should be one text file per document, and a link to the text file should be included in the **Text Link** field within the .DAT file.

The folder structure of the deliverable should follow the below format:

- NYCPROD001 – top-level directory, which should be unique for every deliverable
    - DATA – subdirectory containing load files (.DAT & .OPT)
    - NATIVES – subdirectory containing files provided in native format
    - IMAGES – subdirectory containing single-page .TIF images
    - TEXT – subdirectory containing .TXT files (extracted or OCR)

Files with hidden content, tracked changes, revisions, comments, or notes should be imaged with such content viewable.

## Format for Placeholder Documents

Because full families (parents and children — *e.g.*, emails and corresponding attachments) should be produced together, if a document within a responsive family is fully withheld for privilege, non-responsiveness, or confidentiality, a Bates-stamped, single-page .TIF placeholder indicating either "Document Withheld for Privilege," "Document Withheld for Non-Responsiveness," or "Document Withheld for Confidentiality" should be included as the corresponding image for the withheld file. This information should also be reflected in the **Contains Slip Sheet** and **Slip Sheet Language** fields in the .DAT file.

---

[1] **For any social media, messages (*e.g.*, SMS, MMS, iMessage, etc.), collaboration tools (*e.g.*, MS Teams, Slack, GroupMe), mobile phone data, cloud environments (*e.g.*, Dropbox, Google Drive, One Drive, etc.), databases, or proprietary systems, the parties should meet and confer regarding the production format prior to collection, review, and production.**

<u>**Email Threading**</u>

For email documents, to the extent feasible, produce only the most-inclusive emails in a thread, plus any emails within that thread that contain an attachment or only the emails within that thread that contain a unique attachment.

<u>**Format for Redacted Documents**</u>

Files requiring redactions should be converted and produced as redacted Bates-stamped, single-page .TIF images with associated text and metadata. For each document produced with redactions, the basis for the redactions should appear in the redaction box on the as-redacted image. In addition, the appropriate metadata fields should be populated in the .DAT file. If it is not technically feasible to produce a redacted image for a particular file that requires redactions (*e.g.*, for an Excel file that must be redacted), a copy of the native file with the appropriate portions replaced with "[*the basis for the redaction*]" should be produced. If that is not feasible, the parties should meet and confer as to the best way to produce the file.

<u>**Confidential Documents**</u>

Unless the parties agree otherwise, confidential documents must be produced in the following manner:

(i)    Stamping, branding, or otherwise clearly marking documents with the appropriate confidentiality designation in a manner that will not interfere with legibility or, if applicable, audibility;

(ii)   Including the appropriate confidentiality designation in the **Designation** field in the .DAT load file; and

(iii)  Providing confidential documents, along with their full families, in a separate production volume with "Confidential" in the volume name.

<u>**Document De-Duplication**</u>

A producing party should, prior to review and production, globally de-duplicate its email population using hash values (such as MD5 or SHA-1) as long as the **All Custodians** field is provided. Loose files may also be globally de-duplicated using hash values (such as MD5 or SHA-1) as long as the **All File Paths** field is provided.

# REQUESTED METADATA FIELDS FOR ESI ON NEXT PAGE

**Requested Metadata Fields for ESI***

| FIELD NAME | DESCRIPTION | EXAMPLE |
|---|---|---|
| Production Begin | Starting Bates number of the file | NYCE00000001 |
| Production End | Ending Bates number of the file | NYCE00000005 |
| Production Begin Family | Starting Bates number of the family | NYCE00000001 |
| Production End Family | Ending Bates number of the family | NYCE00000010 |
| Page Count | Number of pages in the file | 6 |
| Native Link | Hyperlink to the native file | Z:\VOL001\NATIVES\00\NYCE00000001.doc |
| All Custodians | All custodians of the record, if global deduplication was applied during processing<br><br>A revised ALLCUSTODIANS field must be provided in the form of an overlay for any documents affected by new custodians added to the database post-production. | Doe, John; Smith, Mary; Robinson, Jane |
| All File Paths | Original path of the file<br><br>All original file paths of the record, if global deduplication was applied during processing<br><br>A revised All File Paths field must be provided in the form of an overlay for any documents affected by new documents added to the database post-production. | Path\Folder2\My Documents; Path\Folder3\SmithDocuments |
| File Name | Name of the file | My Meeting.doc |
| File Extension | Extension of the file | DOC |
| File Type | Classification assigned by the processing software | Microsoft Word Document |
| Title | Data stored in the title metadata field | Agenda for Weekly Meeting |
| Author | Data stored in the author metadata field | jdoe |
| Subject | Subject of the email or the data stored in the subject metadata field | Meeting Agenda |

| | | |
|---|---|---|
| From | Email address and display name of the sender of the email | John Doe <jdoe@company.com> |
| To | Email address(es) and display name(s) of the TO field recipient(s) of the email | Frank Smith <frank.smith@mycompany.com>; Jane Doe <jane.doe@mycompany.com> |
| CC | Email address(es) and display name(s) of the CC field recipient(s) of the email | Joseph Roberts <jroberts@company.com>; Mark Smith <msmith@company.com> |
| BCC | Email address(es) and display name(s) of the BCC field recipient(s) of the email | Joseph Roberts <jroberts@company.com>; Mark Smith <msmith@company.com> |
| Attachment Names | List of files attached to the email | File 1.xls; File 3.zip |
| Date Sent | Sent date of the email | 09/15/2012 |
| Time Sent | Sent time of the email (12-hr. format) | 3:30:25 PM |
| Date Modified | Last modified date of the file, as captured by the original application or the file system | 09/09/2012 |
| Time Modified | Last modified time of the file, as captured by the original application or the file system (12-hr. format) | 9:30:30 AM |
| Importance | Importance property of the email | High |
| Sensitivity | Sensitivity property of the email | Confidential |
| MD5 hash | MD5 hash value of the file | D41D8CD98F00B204E9800998ECF8427E |
| Family Date | Sent date of the email or last modified date of the parent document | 09/15/2012 |
| Family Time | Sent time of the email or last modified time of the parent document (12-hr. format) | 3:30:25 PM |
| Privilege Type | Privilege associated with the document | ACC; AWP |
| Redaction Type | This field will indicate if the document contains a non-privilege redaction | PII; NR; Confidentiality |
| Contains Slip Sheet | Information as to whether the document has been slip-sheeted | Yes |
| Slip Sheet Language | Language that appears on the document slip-sheet, if any | DOCUMENT WITHHELD FOR PRIVILEGE |
| Designation | Confidentiality level of the produced document | CONFIDENTIAL; HIGHLY CONFIDENTIAL |
| Text Link | Hyperlink to the text file | Z:\VOL001\TEXT\00\NYCE00000001.txt |

*** Fields for paper documents should be determined and agreed upon separately.**